## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RED CARPET INN, LLC             :
                                :     **CIVIL ACTION NO. 3:CV-08-1347**
        **Plaintiff**          :
                                :
        **v.**                 :     **(Magistrate Judge Blewitt)**
                                :
FRANK KRATZ and           :
THE CITY OF WILKES BARRE,    :
                                :
        **Defendants**

## MEMORANDUM AND ORDER

Before the Court are the cross-Summary Judgment Motions of the Plaintiff and the Defendants pursuant to Federal Rule of Civil Procedure 56. **(Docs. 35 and 38).**

**I. Background**.

On July 16, 2008, Plaintiff Red Carpet Inn, LLC ("RCI") filed a Complaint against Frank Kratz ("Kratz") and the City of Wilkes-Barre, Luzerne County, Pennsylvania ("City"), collectively referred to as "Defendants". (Doc. 1). On September 9, 2008, Defendants jointly filed their Answer to the Complaint. (Doc. 9). On October 8, 2008, both parties consented to proceed before the undersigned for all matters, including trial, pursuant to 28 U.S.C. §636(c). (Doc. 17). On June 23, 2009, the Court denied Plaintiff 's Motion to Amend Complaint. (Doc. 32). On September 11, 2009, after the close of discovery, both parties filed Motions for Summary Judgment. **(Doc. 35, Defendants, and Doc. 38, Plaintiff).** Also, both parties submitted exhibits with respect to their motions. (Docs. 36, 50 and 56).

The Complaint alleges civil rights claims, under 42 U.S.C. §1983[1], against Defendants. (Doc. 1, ¶4). More specifically, the Complaint alleges that Defendants violated Plaintiff's Fourth Amendment rights against an illegal search and seizure, and Plaintiff's Fourteenth Amendment rights to substantive and procedural due process. (Doc. 1, ¶s 14 and 15).

At all times relevant, Plaintiff RCI was a limited liability corporation located at 400 Kidder Street, Wilkes-Barre, Pennsylvania. (Doc. 1 at ¶1). Plaintiff RCI was a motel business that accommodated guests on daily, weekly, and monthly stays, as well as long-term tenants. (Doc. 36 Ex. A at 37). Plaintiff RCI consisted of five buildings that all were used for either motel guests or long-term tenants. (*Id.* at 62). Kiran Patel was the sole managing member of Plaintiff RCI. (*Id.* at 24).

At all times relevant, Defendant Kratz was the Chief Code Enforcement Officer for the City. (Doc. 36 Ex. B at 13 ¶5). Defendant Kratz's job duties as Chief Code Enforcement Officer included enforcing and interpreting the City's and State's building codes. (Doc. 36 Ex. B at 17). The City has

---

[1]     Title 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

adopted the Uniform Construction Code ("UCC") as its building code. (Doc. 36 Ex. B at 29). The City is an existing municipality in Pennsylvania with its principal place of business at City Hall, 40 East Market Street, Wilkes-Barre, Pennsylvania. (Doc. 1, ¶3).

## II. Standard of Review.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.

1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

## III. Undisputed Material Facts.

The parties agree on several material facts in this case.[2]  On April 2, 2006, a fire occurred at Plaintiff RCI's premises.  The fire only affected the two-story, 48-unit building on the premises. (Doc. 36 Ex. A at 59).  That same night, the City On-duty Line Chief and Assistant Chief with the Fire Inspector conducted an on-site investigation to determine the cause of the fire and inspect the damage caused by the fire. (Doc. 36, Def. Ex. C at pp. 5-7).  As a result of the investigation, the Inspectors noticed that the fire caused damage to the two-story, 48-unit building, in part, because the building lacked fire stops between the rooms and had other fire safety deficiencies. (*Id*. at 7). These deficiencies were found to be building code matters. (*Id*.).  Accordingly, the City Inspectors contacted Defendant Kratz so he could inspect the Plaintiff's two-story, 48-unit building.[3]  After Defendant Kratz's investigation of the Plaintiff's two-story, 48-unit building, Kratz  notified Patel of all fire safety deficiencies that had to be corrected, while the building was closed for fire damage, *via* a letter dated April 10, 2006.  (Doc. 36, Def. Ex. B at pp. 24-28 and Doc. 56, Pl. Appendix, p.

---

[2] As Defendants point out, Plaintiff's counsel failed to follow Local Rule 56.1, M.D. Pa., in his Response to Defendants' Statement of the Facts "SMF"). (Doc. 55).  Plaintiff's counsel did not cite to the record with respect to his denials. (*Id*.).  Rather than accept all Defendant's Statement of Material Facts as admitted by the Plaintiff, as the Rule provides, we have made our own findings of undisputed material facts from the evidence presented by both parties.  We also note that Plaintiff has filed its own SMF.

[3] This investigation, as well as all others, were always done through the consent of either Patel or Patel's on-site daytime manager Ray Vega. (See Doc. 36, Def. Ex. A at p. 113 and Ex. D at pp. 17-18).  Further, Vega had the authority as part of his job to grant permission to allow others onto the property. (*Id*).

7a).  From April 2, 2006 until on or about July 24, 2006, the Plaintiff's two-story, 48-unit building was the only building located on Plaintiff's subject property which was closed. (Doc. 36, Def. Ex A, Patel Dep. at pp. 74-76).

On July 28, 2006, Defendant Kratz re-investigated the Plaintiff's two-story, 48-unit building and determined that all of the fire safety corrections had been adequately made.  Accordingly, Defendant Kratz allowed Plaintiff RCI to re-open the stated building.  On July 24, 2006[4], the City Department of Health received complaints about possible health code violations and insect infestation at Plaintiff RCI. (Doc. 36, Def. Ex. L at pp. 22-24).  As a result, the Department of Health conducted an investigation of all the Plaintiff's other buildings except the two-story, 48-unit building. (Doc. 36, Ex. L at pp. 34-35).  The Department of Health determined that the other buildings were unfit for human habitation and, thus, posted notices to shut down the buildings and vacated guests immediately.  (*Id.*).

Although Plaintiff initially sought punitive damages against the Defendant City, both parties agree that Plaintiff, even if successful in this action, could not recover punitive damages against the City. (Doc. 9, ¶ 29, and Doc. 11, ¶ 29).

In *Monell v. Dep't. of Soc. Serv. Of NYC*, 436 U.S. 658 (1978) the Supreme Court held "municipalities and other local government units are among those 'persons' to whom Section 1983 applies." Although §1983 applies to municipalities and other local government units, such entities are not subject to punitive  damages under the statute's provisions.  *See City of Newport v. Fact*

---

[4]  It is unclear from the parties and depositions exactly when the other buildings on RCI's premises were posted, but July 24, 2006 seems to be the date it had occurred.

*Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that respondents were not entitled to punitive damages against the City of Newport under their §1983 claim when the city revoked respondents' license to promote music concerts).   Thus, the Court will grant Defendants' Summary Judgment with respect to Plaintiff 's claim for punitive damages against Defendant City since the City is immune from such damages.

## IV.  Discussion

### 1. *Fourteenth Amendment Substantive Due Process Claim*

Plaintiff alleges that Defendant Kratz acted in an arbitrary, capricious, and irrational manner and acted with specific intent to deprive it of its  civil rights. (Doc. 1).  Further, Plaintiff alleges that Kratz acted in an arbitrary, capricious, and irrational manner by summarily closing its motel and displacing all of its occupants. (*Id*. at ¶ 12).   Plaintiff avers that the closing of its property by Defendants on July 24, 2006, violated its  Fourteenth Amendment substantive and procedural due process rights.

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's Fourteenth Amendment due process claims.

The Court agrees with Defendants that their Summary Judgment Motion should be granted with respect to Plaintiffs' Fourteenth Amendment substantive due process claim.  As Defendants point out (Doc. 50, pp. 17-18), claims of substantive due process violations are cognizable under Section 1983 only when another constitutional provision does not provide a more explicit source for the right asserted. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994).  In other words, "[when a particular Amendment provides an explicit textual source of constitutional protection against a

particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

In this case, the "particular sort of governmental behavior" the Plaintiff is alleging "constitutional protection against" lies in the Fourth Amendment, against unreasonable search and seizure, and the Fourteenth Amendment, procedural due process, which are essentially the claims Plaintiff raises throughout its Complaint. (Doc. 1, ¶'s 11-17).

The Court also disagrees with Plaintiff's argument that this case is completely distinguishable from *Para v. City of Scranton*, 2008 WL 2705538 (M.D. Pa.). As in *Para*, the "crux of this case" is both the alleged seizure of Plaintiff's business by Defendants and the alleged lack of procedures available to Plaintiff to challenge Defendants' seizure. Therefore, Plaintiff's claim is properly brought under the Fourth Amendment, which protects against unreasonable search and seizure, and the Fourteenth Amendment, which guarantees procedural due process. Plaintiff argues that because it has more constitutional violation claims than did the Plaintiff in *Para*, this Court should distinguish the instant case from *Para*. (Doc. 55 at p. 25). Just because there are more claims to Plaintiff's case, the stated rule annunciated in both *Graham* and *Albright*, which was applied by this Court *Para,* is also applicable to the present case. As the *Albright* Court, 510 U.S. at 273, stated:

> "When a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims."[5]

---

[5] *Quoting Graham v. Conner*, 490 U.S. 386, 395 (1989).

Accordingly, since Plaintiff's claim against Defendants is grounded in an explicit textual source, it the Fourth Amendment's protections, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiff's Fourteenth Amendment Substantive Due Process claim, and it will deny Plaintiff's Summary Judgment Motion with respect to this claim. *See El Malik v. City of Philadelphia*, 2007 WL 984455, *7, n. 2 (E.D. Pa. 2007)("Although Plaintiffs do allege that Defendants acted arbitrarily and oppressively in the demolition of their buildings, their claim fits squarely within the contours of the Fourth Amendment's protections (applicable to the Defendants *via* the Fourteenth Amendment)".).

### 2. *Fourth Amendment Illegal Search and Seizure Claim*

Plaintiff alleges in its Complaint that Defendant Kratz unlawfully entered its premises, performed an unlawful search of its premises, and closed down its premises, which constituted an illegal seizure in violation of the Fourth Amendment.

First, the Court does not find any evidence to support Plaintiff's claim of an illegal search by Defendant Kratz. While Patel, the owner and sole managing member of Plaintiff RCI, was not always on the Plaintiff's premises during all Defendant Kratz's visits to RCI, Ray Vega, RCI's daytime on-site manager, was present. The undisputed evidence shows that Vega gave consent to Kratz to perform the investigations on RCI's premises. (Doc. 36, Def. Ex. D at pp. 17-18). Vega, as manager, could give consent to allow people onto the premises. (*Id.*). Further, in Patel's own deposition, he states that he never told Vega to keep Defendant Kratz off the RCI premises. (Doc. 36, Def. Ex. A at p. 113).

As the Court stated in *United States v. Matlock*, 415 U.S. 164, 171 (1974):

> Although municipal searches of apartment buildings for code violations typically require a warrant, *Camara v. Municipal Court*, 387 U.S. 523, 533, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the defendants "may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."

In this case, as Defendants contend (Doc. 50, p. 6), the evidence demonstrates that Vega was a third party who possessed both the authority to allow inspectors onto the RCI premises, as well as a sufficient relationship to the premises, as on-site manager, to allow for City code violation and health department investigations to be conducted on the premises.

Therefore, the issue is whether the alleged seizure of Plaintiff's premises by Defendant Kratz rose to a level of unreasonableness that would constitute a violation of Plaintiff's Fourth Amendment rights. Neither party contests that Plaintiff had a possessory interest covered by the Fourth Amendment, and that the closing of Plaintiff's property constituted a seizure.[6] As Plaintiff correctly points out, "a seizure of property can violate the Fourth Amendment even if the preceding search [that lead to the seizure] was constitutional." (Doc. 55 at p. 14, citing *Soldal v. County Cook, Ill.*, 506 U.S. 56, 67 (1992)). The Third Circuit, however, held in *McGroarty v. Gardner*, 68 Fed. Appx. 307, 312 (3d Cir. 2003), "where the seizure occurs after a valid demonstration of consent to the search, the seizure does not violate the owner's privacy or possessory interests." (citation omitted).

---

[6] A seizure occurs when there is come meaningful interference with an individual's possessory interest. *See United States v. Jacobsen*, 466 U.S. 109, 113(1984).

Accordingly, the Court uses the same analysis to determine whether there was a valid demonstration of consent as it did to determine whether the search was reasonable. Again, the Court arrives at the same conclusion. As stated, the evidence shows that Vega was the daytime on-site manager of RCI who had the authority to give consent to City inspectors to enter the property. Vega gave Defendant Kratz permission to enter and inspect the premises every time Kratz came to RCI. (Doc. 36, Def. Ex. D at pp. 17-18) Further, Patel, the owner of the premises, never directed Vega to do otherwise. (Doc. 36, Def. Ex. A at p. 113). Moreover, as Defendants state (Doc. 50, p. 6), the evidence is undisputed that Defendant Kratz allowed RCI to re-open its two-story building at issue on July 28, 2006, four days after he closed it. (Doc. 36, Ex. B, pp. 197-198 & Ex. A, pp. 65-66).

Thus, the Court will grant Defendants' Motion for Summary Judgment with respect to Plaintiff's Fourth Amendment claim, and it will deny Plaintiff's Summary Judgment Motion with respect to this claim.

### 3. Fourteenth Amendment Procedural Due Process Claim

To establish a Fourteenth Amendment procedural due process claim, under § 1983, the Plaintiff must show that the Defendants were acting under the color of law when they deprived the Plaintiff of a protected property interest and that the procedures for challenging the deprivation were inadequate. *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 597 (3d Cir. 1995) overruled on other grounds by *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003).

As the Court stated in *El Malik v. City of Philadelphia*, 2007 WL 984455, *8 (E.D. Pa. 2007):

> Procedural due process normally requires that a governmental deprivation of life, liberty or property be preceded by notice and opportunity for a hearing appropriate to the nature of the case. *Logan v. Zimmerman Brush Co*. 445 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).  As there is no real question that the Plaintiff's ownership interest in real property merits the procedural protections of due process of law, *see James Daniel Good Real Property*, 510 U.S. at 49, the only remaining question is whether the Plaintiffs have come forward with sufficient evidence to show constitutionally inadequate notice.

"Due process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers,* 547 U.S. 220, 126 S.Ct. 1708, 1714, 164 L.Ed.2d 415 (2006). What is required is notice "reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent." *Jones,* 547 U.S. at ----, 126 S.Ct. at 1714 (holding that when the state sent notice of a tax sale but it was returned unclaimed, it had to take additional reasonable steps to attempt to provide notice to the property owner before selling the property, if it was practicable to do so).

In *Reisinger v. Luzerne County*, 2010 WL 1976821, *15 (M.D. Pa.), the Court stated:

> The Due Process Clause of the Fourteenth Amendment prohibits the states from depriving any person of property without "due process of law." U.S. Const. amend. XIV, § 1. To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege:(1) he was deprived of an individual interest that is encompassed within the Fourteenth

11

Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.' " *Hill v. Borough of Kutztown,* 455 F.3d 225, 233-34 (3d Cir.2006) ( *citing Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)). In *Sample v. Diecks,* 885 F.2d 1099, 1113 (3d Cir.1989), the Third Circuit identified a plaintiff's need to allege and prove five things in relation to a § 1983 procedural due process claim:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the Defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

> *Id.* at 1113-14; *see also Zellner v. Monroe County Mun. Waste Management Authority,* No. 3:07-CV-1976, 2008 WL 2962595, at *5 (M.D.Pa. July 28, 2008) (Caputo, J.).

> "The level of process due to a party prior to the deprivation of a property interest, under the Due Process Clause, is highly dependent on the context." *In re Mansaray-Ruffin,* 530 F.3d 230, 238 (3d Cir.2008). The United States Supreme Court noted the "cryptic and abstract words" of the Due Process Clause in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950). The Court held that prior to the deprivation of property, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action, and afford them an opportunity to present their objections." *Id.* at 314. The Court has held that mail service "is reasonably calculated to provide actual notice," Tulsa Professional Collection Services, Inc. v. Pope,485 U.S. 478, 490 (1988), and commented that due process requires nothing more and certainly not [in a case] where [the] petitioner had a statutory duty to pay his taxes," *Jones v. Flowers,* 547 U.S. 220, 241-42 (2006).

In the present case, there is dispute among the parties as to who actually posted the four buildings[7] on Plaintiff's premises. It is also unclear who actually ordered the buildings to be vacated. It appears from depositions that health code violations are outside of Defendant

---

[7] The four buildings do not include the two-story, 48-unit building.

Kratz's duties as Chief Code Enforcement Officer. (Doc. 36, Def Ex. B at p. 20 and p. 90, and Doc. 36, Ex. L, at p. 11).  But Defendant Kratz's own testimony shows that he may have helped in the Department of Health's investigation and its postings of the Plaintiff's property. (Doc. 36, Ex. B, p. 65).

As Defendant correctly points out (Doc. 50, pp. 20-21):

> In a case such as this one, where a plaintiff has sued under 42 U.S.C. § 1983 alleging that state actors failed to provide it with due process, the Court should employ a "familiar two-stage analysis." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quoting *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984)). The Court inquires (1) whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of "life, liberty, or property, and (2) whether the procedures available provided the plaintiff with "due process of law." "In order to state a claim for failure to due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Id.* "A state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Id.*

There is a dispute as to Defendant Kratz's  involvement with the Department of Health's investigation and the Department of Health's posting notices at Plaintiff's property. However, it is not disputed that Plaintiff did not receive written notice either under the City's Nuisance Code or the City's Building Code with respect to the Code violations found on its properties which lead to the closing of its buildings.  Specifically, it is not disputed that Defendant Kratz did not send written notice to Plaintiff RCI for the Code violations discovered on July 24, 2006, during the inspection of Plaintiff's two-story, 48-unit  building. Plaintiff states that the International Building Code, which Defendant City adopted, required

that Plaintiff be given notice specifying the unsafe conditions and the required repairs or improvements. (Doc. 39, pp. 16-17). Plaintiff has supported its assertion with evidence. (Doc. 56, pp. 34a-35a).[8]  Defendant Kratz testified that he did not give Patel any written notice regarding his posting of Plaintiff's property on July 24, 2006, despite the notice requirement contained in the Codes.  (Doc. 56, pp. 32a-33a).  These Code violations caused the closing of Plaintiff's two-story, 48-unit building for four days, until July 28, 2006 when it was re-opened.  The remainder of Plaintiff's property was not allowed to re-open. Plaintiff 's evidence indicates that out of its five building, only the  two-story, 48-unit building was allowed to re-open on July 28, 2006.  (Doc. 56, pp. 20a-24a).  Plaintiff's other four buildings, besides its two-story, 48-unit building, included  the front building (office building)and  the rear building (efficiency with 13 rooms). (*Id*.).  Also, after the Plaintiff's other buildings remained closed and after the re-opening of its  two-story, 48-unit building, Patel repeatedly wrote to Defendant Kratz and asked him to provide a list of the things that needed to be done so that Plaintiff's other buildings could be re-opened.  (*Id*., pp. 20a-24a). Plaintiff states that Defendant Kratz did not respond to Patel's letters requesting a list of violations which Plaintiff had to correct in order to re-open its reaming building, including its closed Efficiency Building with 13 rooms.  (Doc. 39, pp. 9-11).

Despite the closure of Plaintiff's properties, we agree with Plaintiff (Doc. 55, pp. 28-28, 31-38), that Patel did not receive any written notice listing violations and he was not

---

[8]Since Plaintiff's evidence contains the notice requirements in the City's Nuisance Code and Building Code, the Court does not repeat them herein. (Doc. 56, pp. 34a-35a).  Also, the notice requirements are also quoted in Plaintiff's brief, Doc. 39, pp. 16-17 an 20-21.

advised of his appellate rights, administrative and judicial, regarding the closure. Nor was Patel advised of how he could request a hearing regarding the closures of Plaintiff's buildings. The Court finds that whether Plaintiff had sufficient notice under the due process clause regarding the Code violations which lead to Defendant Kratz's posting and closing Plaintiff's buildings is a disputed material fact which the jury should decide with respect to Plaintiff's Fourteenth Amendment procedural due process claim.

Additionally, the Court finds that Defendants are not entitled to summary judgment based on their argument that the alleged violation of Plaintiff 's Fourteenth Amendment procedural due process right was *de minimis* or that there was an emergency situation which triggered a lack of procedural due process. As discussed, it is undisputed that the Code violations Defendant Kratz discovered on July 24, 2006, during the inspection of Plaintiff's buildings, caused the closing of Plaintiff's two-story, 48-unit building to be closed for four days until July 28, 2006. The remainder of Plaintiff's property, *i.e.* its other four buildings, were still closed after July 28, 2006. Plaintiff's evidence indicates that its other four buildings were closed due to Code violations at least through July 2007. (Doc. 56, p. 24a). The Court does not find that this deprivation was merely *de minimis*.

Plaintiff also contends that "[a]s a result of the actions of [Defendant] Kratz, the Plaintiff has essentially gone out of business and its building is currently vacant due to the fact that the Plaintiff could not make ends meet with the buildings which were eventually allowed to reopen." (Doc. 55, p. 39).

15

Therefore, the Court will deny both Plaintiff's Summary Judgment Motion and Defendants' Summary Judgment Motion with respect to Plaintiff's Fourteenth Amendment procedural due process claim.

### 4. *Monell Claim against Defendant City*

In *Reisinger,* the Court noted, "[a] municipality can only be held liable under a section 1983 theory 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' *Monell v. Dep't of Social Services,* 436 U.S. 658, 694 (1978)." 2010 WL 1976821, *15, n. 23.

To the extent Plaintiff names the City of Wilkes-Barre as a Defendant, the Court must apply the principles of *Monell* to the claims against this Defendant. *Id.* Defendants argue that the Defendant City is entitled to the entry of summary judgment since Plaintiff has not established a viable *Monell* claim against it. They state that Plaintiff has not offered any evidence that the City had any policy or custom that caused his alleged constitutional violations. Defendants argue that Plaintiff has failed to produce any evidence to support its *Monell* claim against the City. (Doc. 50, pp. 32-33). The Court agrees with Defendants and it will grant Defendants' Summary Judgment Motion with respect to all claims against Defendant City.

Plaintiff named the City as a Defendant along with Kratz with respect to remaining Fourteenth Amendment procedural due process claim, pursuant to *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658 (1978). See *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 587

16

(M.D. Pa. 2008). As discussed above, the Court has found that Plaintiff has failed to establish that it suffered any violation of its Fourth Amendment rights and its Fourteenth Amendment substantive due process rights by Defendants. Thus, only Plaintiff's Fourteenth Amendment procedural due process claim remains as against Defendant City, as well as against the individual Defendant, Kratz. As discussed, Plaintiff's Fourteenth Amendment procedural due process claim against the individual Defendant, Kratz, will proceed to trial.

Under *Monell*, "municipalities and other local government units are among those 'persons' to whom Section 1983 applies." *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9 (M.D. Pa.). Since Defendant City is a local government unit, the standards annunciated in *Monell* apply to it. *See Malles v. Lehigh County*, 2009 WL 2258623, *7 (E.D. Pa.), 639 F.Supp.2d 566 (E.D. Pa. 2009).

In *Malles,* the Court stated:

> According to the teaching of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Lehigh County "can be sued directly under § 1983 ... [when] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [Lehigh County's] officers" or where the constitutional deprivations occurred pursuant to governmental custom. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018.

*Id.*

Thus, as the *Pribula* Court stated:

> In order to directly bring a suit against a local governing body such as the Defendant School District pursuant to 42 U.S.C. § 1983 for monetary, declaratory, or injunctive relief, Plaintiffs must show that the allegedly unconstitutional activity either implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by the officers of the local governing body. *Monell v. Dept.*

17

> of *Social Services of the City of New York,* 436 U.S. 658, 690, 98 S.Ct.
> 2018, 56 L.Ed.2d 611 (1978). Thus, in order to establish their claim
> against the Defendant School District, Plaintiffs must show that (1) they
> suffered a deprivation of a federal right, (2) that was the result of either
> an express policy, widespread custom, or deliberate act of a decision-maker
> with final policy-making authority which (3) proximately caused Plaintiffs'
> injuries. *Id.*

599 F. Supp. 2d at 571.

In its opposition Brief, Plaintiff states that its evidence shows that the individual Defendant, Kratz, was furthering the mayor's "crusade to clean up the City's image when he closed the [RCI]". (Doc. 55, p. 43). Plaintiff offers the July 25, 2006 Times Leader newspaper article entitled "Wilkes-Barre shuts down Red Carpet Inn" to support its claim against the Defendant City. (Doc. 56, p. 13a). In the article, Defendant Kratz was mentioned as follows:

> Kratz threatened that the city will not tolerate negligent
> slumlords, furthering Mayor Thomas Leighton's crusade to clean
> up the city's image.
>
> "If you have a rundown property, deplorable, dirty, we will
> find it and correct it," Kratz said. "We're working very hard to bring
> Wilkes-Barre back to where it was, where the downtown as beautiful
> and the neighborhoods were safe. This will happen (in) this
> administration."

(*Id.*).

Plaintiff argues that Defendant Kratz's "comments show that he was furthering Mayor Leighton's policy to clean up neighborhoods." (Doc. 55, p. 43). Plaintiff also states that "in furtherance of its policy, the [Defendant City] created the Community Action Team ("CAT") to sweep into properties led by [Defendant] Kratz in total disregard for the property owner's rights." (*Id.* p. 44). The Court finds Plaintiff's evidence insufficient to establish a *Monell* claim

against Defendant City.

The Court concurs with Defendants and, based on the above stated facts, finds that Plaintiff has not shown through its evidence any policy, practice or custom of the City to allow its Code enforcement officers to conduct unconstitutional inspections and closures of properties located in the City. (Doc. 50, p. 33). Also, there is no evidence submitted by Plaintiff that any such policy caused the constitutional violations alleged. Further, Defendants state that "throughout its Brief in Support, the [Plaintiff] Red Carpet repeatedly argues that neither [Defendant ] Kratz nor the [city] Health Department [employees] complied with the City's policies and procedures" with respect to their Code enforcement activities and their posting violations notices on properties in the City. (*Id*.).

The *Pribula* Court stated:

> Municipalities, however, cannot be held liable solely because they employed a tortfeasor. *Id.* "Instead, it is when execution of a government's *policy or custom* ... inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018 (emphasis added). Accordingly, if the Court is unable to determine that a School District policy or custom was the cause of the alleged violation to Plaintiffs' First Amendment rights, then the Plaintiffs' claims against the School District cannot proceed. *See City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

599 F. Supp. 2d at 577-578.

In the present case, the Court finds insufficient evidence that a policy or custom of Defendant City was the cause of the alleged violation of Plaintiff's Fourteenth Amendment procedural due process rights.

Defendant City cannot be held liable for the alleged conduct of the individual Defendant, Kratz, pursuant to *respondeat superior,* as Plaintiff attempts to do in this case with respect to its claims. *Meyers v. Schuylkill Co. Prison*, 2006 WL 559467, *9. Rather, Defendant City is "subject to liability to the extent it maintains an unconstitutional custom or policy that caused the alleged constitutional violation." *Id.* (citation omitted). As discussed above, and as Defendants contend, no such custom or policy is established by Plaintiff through its evidence with respect to Defendant City.

As the *Kokinda* Court stated:

> A municipality cannot be held liable for the actions of its employees under § 1983 based upon *respondeat superior*. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, "the government as an entity is responsible under § 1983" when it "caused" the Plaintiff's injury; that is, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. 2018. Where, as here, Plaintiff alleges that the flawed policy is a failure to train, the municipality can be held liable when "'that failure amounts to "deliberate indifference . . . [to the constitutional rights of persons with whom the police come in contact.'" *Woloszyn v. County of Lawrence*, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate 'constitutional'' injury." *Id.* at 325 (citations omitted).

> To survive a motion to dismiss, the plaintiff must "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002) (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.ct. 1382, 137 L.Ed.2d 626 (1997)).

*Kokinda*, 557 F. Supp. 2d at 590-91.

Plaintiff does not establish through its evidence the above stated requirements against Defendant City necessary to make it subject to  municipality liable in a § 1983 action. Plaintiff does not show any causal nexus between an identifiable policy and its alleged constitutional injuries.  The Court  finds that Plaintiff has not sufficiently established a claim under *Monell* against Defendant City with respect to any of its constitutional claims.  Plaintiff simply argues that since Defendant Kratz stated in the newspaper, with respect to his posting of violations at Plaintiff's buildings, he was furthering the mayor's crusade to clean up the City's image, that his alleged failure  to afford Plaintiff with proper notice and opportunity for hearing and appeal constituted an official policy of the City not to give property owners required notice under its Codes.   A municipality cannot be responsible for damages under Section 1983, *(i.e.* solely because of actions by its officials), *Monell v. Dept. of Soc. Servs., New York City*, 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and "can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 4889 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  The Court  must review claims of municipal liability "independently of the Section 1983 claims against the individual Defendants."  *Kniepp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996); *Fagan v. City of Vineland*, 22 F.3d 1283, 1294 (3d Cir. 1994).

A plaintiff must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the officials come into contact. *City of Canton*, 489 U.S. at 388, 109 S.Ct. 1197. This typically requires proof of a pattern of underlying constitutional violations. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Although it is possible, proving deliberate indifference in the absence of such a pattern is a difficult task. *See id.* There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting *City of Canton*, 489 U.S. at 385, 109 S.Ct. 1197).

A municipality such as Defendant City can only be liable for a constitutional deprivation that is directly caused by a municipal policy, custom or practice. To prevail, the Plaintiff must identify a municipal policy or custom that reflects a conscious choice of policymaking officials that amounts to deliberate indifference to the rights of the people with whom they come into contact. *Carswell*, at 224; *McCracken v. Freed*, 2006 WL 833452 * 3 (E.D. Pa.).

Based on *Pribula, Kokinda, Meyers*, and *Malles*, as well as *Mueller v. Centre County*, 2009 WL 4912305 (M.D. Pa.), the Court finds Plaintiff has not sufficiently demonstrated through its evidence that any alleged conduct by the individual Defendant was due to Defendant City's customs, policies, practices and procedures, and it has not demonstrated how these policies gave rise to the constitutional violations alleged in its Complaint. The Court finds Plaintiff's stated general evidence against Defendant City to be insufficient to state

a claim against it under *Monell*.

Therefore, the Court will grant Defendants' Summary Judgment with respect to all claims against Defendant City.

_____5. *Qualified Immunity for Defendant Kratz*

Since the Court has found disputed issues of material fact as to whether Defendant Kratz violated Plaintiff's Fourteenth Amendment procedural due process rights, the Court will deny Defendants' Summary Judgment Motion insofar as it requests Kratz be afforded qualified immunity.

Public officials are entitled to qualified immunity and, thus are shielded from civil damages from their conduct within the scope of their official duties, unless their conduct clearly violated constitutional or statutory rights and they would have reasonably been aware of that violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982). In *Pribula v. Wyoming Area School Dist.*, 599 F. Supp. 2d 564, 578 (M.D. Pa. 2009), the Court stated:

> "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, ---U.S. ----, ----, 129 S.Ct. 808, 815, 172 L.Ed.2d 565, 573 (2009) (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.' " *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). In *Saucier v. Katz*, the Supreme Court established a two-step process for courts examining the qualified immunity of government officials. 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "First, a court must decide whether the facts that a plaintiff has alleged ( *see* Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown ( *see* Rules 50, 56) make out a violation of a constitutional right." *Pearson*, --- U.S. at ----, 129 S.Ct. at 815-16, 172 L.Ed.2d at 573 (citing *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151). "Second, if the plaintiff has

satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct." *Id.* Recently, in *Pearson,* the Supreme Court held that "while the sequence set forth [in *Saucier* ] is often appropriate, it should no longer be regarded as mandatory." *Pearson,* --- U.S. at ----, 129 S.Ct. at 818, 172 L.Ed.2d at 576.

The *Pribula* Court further stated:

> Each of the individual Defendants in this case is entitled to qualified immunity unless their conduct violated a clearly established constitutional right. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. 3034. "The qualified immunity doctrine gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Berg v. County of Allegheny,* 219 F.3d 261, 272 (3d Cir.2000). However, "a reasonably competent public official should know the law governing his conduct' unless [he] can either demonstrate extraordinary circumstances or that [he] 'neither knew nor should have known' about the legal right in question." *Gruenke v. Seip,* 225 F.3d 290, 299 (3d Cir.2000) (quoting *Harlow,* 457 U.S. at 818-19, 102 S.Ct. 2727).

599 F. Supp. 2d at 579.

In *Giles v. Kearney*, 571 F. 3d 318, 325-26 (3d Cir. 2009), the Court stated:

> Government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202, 121 S.Ct. 2151 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). "If officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The Supreme Court recently held that the sequence of the two-part Saucier analysis

> is no longer mandatory; trial courts are now permitted to use discretion as to which prong of the analysis to apply first. *ee Pearson v. Callahan,* --- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).
>
> Qualified immunity is a complete immunity from suit, not just a defense to liability, and is considered at the earliest possible stage of proceedings, apart from the analysis of the underlying claim itself. *Saucier,* 533 U.S. at 194, 121 S.Ct. 2151. The issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity. *See Deary v. Three Un-Named Police Officers,* 746 F.2d 185, 192 (3d Cir.1984); *Czurlanis v. Albanese,* 721 F.2d 98, 108 n. 8 (3d Cir.1983).

The law is well settled that "procedural due process normally requires that a governmental deprivation of ... property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *El Malik,* 2007 WL 984455, *8(citation omitted). Thus, in the present case, during the relevant times in 2006, the law was clearly established that Defendants could not deprive Plaintiff of its use to its properties, i.e. buildings, without notice and an opportunity for hearing.

In *Giles*, the Court stated that "[t]he primary step in assessing the constitutionality of the officers' alleged actions is to determine the relevant facts." 571 F. 3d at 326 (citation omitted). Further, the District Court is "required to view the facts in the light most favorable to the Plaintiff." *Id.* In a case such as the present one, when presented with a qualified immunity defense in a summary judgment motion, generally the Court will adopt the Plaintiff's version of the facts. *Id.*

As discussed above, when the Court accepts Plaintiff's version of the surrounding events in which Defendant Kratz undisputedly closed its buildings, it has found that Plaintiff has sufficiently presented evidence to allow its Fourteenth Amendment procedural due

process claim against Defendant Kratz to proceed to trial.

Since the Court has determined that Plaintiff has withstood the review of its § 1983 claim under the Fourteenth Amendment against Defendant Kratz, the only issue is whether this individual Defendant would have reasonably been aware of the alleged Fourteenth Amendment violations. Plaintiff's evidence shows that Defendant Kratz was aware that the City's Codes contained notice requirements and that he did not give Plaintiff notice after he posted violations at RCI.

In *Bennett v. Murphy*, 174 F.3d 133, 136-137 (3d Cir. 2001), the Court stated:

> Once it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established. That is, in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited? The focus in this step is solely upon the law. If it would not have been clear to a reasonable officer *what the law required* under the facts alleged, he is entitled to qualified immunity. If the requirements of the law would have been clear, the officer must stand trial.

Thus, the Court will deny Defendants' Summary Judgment Motion insofar as it asserts that Defendant Kratz is entitled to qualified immunity.

## V. Conclusion.

Based on the foregoing, the Court will grant the Defendants' Motion for Summary Judgment in regards to the Plaintiff's substantive due process claim under the Fourteenth Amendment. Further, Defendants' Summary Judgment Motion will be granted with respect to Plaintiff's Fourth Amendment claim. The Court will deny Defendants' Motion for

Summary Judgment in regards to the Plaintiff's procedural due process claim under the Fourteenth Amendment. Further, the Court will deny Plaintiff's Motion for Summary Judgment with respect to all three of its claims.

Additionally, the Court will grant Defendants' Summary Judgment with respect to all claims against Defendant City. Finally, the Court will deny Defendants' Summary Judgment Motion insofar as it asserts that Defendant Kratz is entitled to qualified immunity.

An appropriate Order and Judgment will issue.[9]

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 19, 2010**

---

[9]By separate Order, the Court will schedule a pre-trial conference with respect to Plaintiff's remaining procedural due process claim under the Fourteenth Amendment.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RED CARPET INN, LLC | : | |
| | : | **CIVIL ACTION NO. 3:CV-08-1347** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Blewitt)** |
| | : | |
| FRANK KRATZ and | : | |
| THE CITY OF WILKES BARRE, | : | |
| | : | |
| **Defendants** | | |

**ORDER AND JUDGMENT**

AND NOW, this 19th of August, 2010, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion for Summary Judgment **(Doc. 35)** in regards to the Plaintiff's Fourteenth Amendment substantive due process claim is **GRANTED.**

2. Defendants' Summary Judgment Motion is **GRANTED** with respect to Plaintiff's Fourth Amendment claim.

3. Defendants' Motion for Summary Judgment in regards to the Plaintiff's procedural due process claim under the Fourteenth Amendment is **DENIED.**

4. Plaintiff's Motion for Summary Judgment **(Doc. 38)** is **DENIED** with respect to all three of its claims.

5. Defendants' Summary Judgment with respect to all claims against Defendant City is **GRANTED.**

6. Defendants' Summary Judgment Motion, insofar as it asserts that Defendant Kratz is entitled to qualified immunity, is **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED THAT:**

Judgment is entered in favor of Defendant City and against Plaintiff with respect to all of Plaintiff's claims against it.

Judgment is entered in favor of Defendant Kratz and against Plaintiff with respect to Plaintiff's Fourteenth Amendment substantive due process claim and its Fourth Amendment claim.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: August 19, 2010**